Justice Jim Rice delivered the Opinion of the Court.
¶1 Mary Ann Reese Sutton (Sutton) appeals her convictions, after jury trial, of charges related to marijuana possession and production, and resisting arrest, in the Seventeenth Judicial District Court, Valley County. We affirm, addressing the following issues:
1. Must Sutton's marijuana-related convictions be reversed pursuant to the exemption from prosecution contained in the Montana Medical Marijuana Act (MMA)?
2. Was Sutton's conviction of resisting arrest supported by substantial evidence?
FACTUAL AND PROCEDURAL BACKGROUND
¶2 On March 18, 2014, Glasgow Police Chief Bruce Barstad visited Sutton's residence, believing Sutton's vehicle was left in a city park, stuck in the mud. Barstad spoke with Sutton outside the entryway of her home, established it was Sutton's vehicle, and issued her a citation. While speaking with Sutton, Barstad smelled the odor of marijuana, observed a two-foot tall marijuana plant in a five-gallon bucket in the outer porch area, and noticed a water system running into the house. Barstad believed the water system indicated a grow operation and asked if he could look at the marijuana in the house. Sutton responded that he needed a warrant. Barstad took a picture of the marijuana plant in the outer area and left. He forwarded the information to Chief Deputy Reed Mesman, who, in turn, briefed Deputy Sheriff Estevez. Estevez investigated and determined that Sutton's partner, Anthony Mitchell, who was then serving a jail sentence, was a registered medical marijuana cardholder. Estevez also determined that Sutton had previously been a cardholder, but her card had expired.
¶3 On March 28, Estevez and Deputy Sheriff Wayne Shipp visited Sutton's home.[1] Sutton recognized the deputies and greeted them. They inquired about the marijuana and Sutton replied, "you are welcome to come in and look at them" and "there's nothing illegal here." Sutton escorted them to a room where additional marijuana plants were growing. Before entering the room, Sutton indicated the plants couldn't be exposed to light yet, but allowed the officers to use their flashlights. They entered the room and observed a large grow light suspended from the ceiling, several running box fans, and nine mature marijuana plants, which Sutton explained were just beginning to flower. She stated that she was a "farm girl from Indiana" and a "master gardener," that she was responsible for ensuring "controlled conditions," and had cared for the plants by "water[ing] them" and "every day ... mak[ing] sure" there were no insects on the plants. Sutton detailed the lighting and ventilation needs, the growth and flowering of the plants, and the drying and harvesting process to the officers. The deputies obtained her consent to search the freezer for consumable marijuana, *1204 but found none. The deputies then discussed compliance with the MMA with Sutton. She indicated that, at one time, she had been a licensed attorney in Montana, and believed that because the property was "jointly owned," her act of taking care of the plants in Mitchell's absence was legally permissible. Estevez asked if she had a medical marijuana card, and Sutton responded that she had one in the past but her medical issue had resolved, so she let the card expire. The deputies then left the property.
¶4 On April 8, 2014, Estevez and other officers executed a search warrant at Sutton's residence while Sutton was not present at the house. They seized the nine mature marijuana plants in the grow room, 18 seedling plants growing underneath a heat light in the living room, and an additional mature plant in the living room.[2] They also seized two large mason jars containing a green leafy residue, a metallic smoking pipe, two digital scales, marijuana in a brown paper bag, and growing supplies from the grow room. They left and submitted the seized evidence to a secure storage facility.
¶5 When Estevez returned to the Valley County Sheriff's Office, he recognized Sutton's vehicle parked at the nearby courthouse. Estevez located Sutton in the courthouse's public law library, and approached her to discuss the earlier search at her residence, sitting down at a table across from her. Before the conversation, Estevez asked Deputy Mesman to accompany him. The officers told Sutton that they had executed a search warrant at her house and seized marijuana and related materials. Sutton had already been to the residence and possessed copies of the property receipt and search warrant the officers had left there during the search.
¶6 Estevez and Mesman testified at trial that Sutton quickly became upset and began yelling loudly, called Estevez foul names, and stated she was preparing a brief to sue the State and the Valley County Sheriff's Office. Estevez warned Sutton that if she did not stop her actions, he would place her under arrest for disorderly conduct, at which point Sutton stood up, leaned over the table, pointed her fingers in Estevez' face, and continued the conduct. Estevez then stood up and advised Sutton he was placing her under arrest. He testified he grabbed Sutton's arm, but that she began "forcefully and actively pulling away" and ignored his commands to stop resisting. Estevez then employed an arm bar maneuver to position Sutton for placement of handcuffs, but she pushed off the table with her other hand, making it difficult for Estevez to gain control, so Mesman intervened to assist. Mesman testified that Sutton was physically resisting and it was difficult to "plac[e] handcuffs on her" and "gain control," and that she became "rigid ... trying to pull away, continued to yell loudly and ... use[d] abusive language [and] profanities." The deputies testified they eventually placed Sutton in handcuffs and escorted her out of the library, while Sutton continued to pull away and at times make her body rigid and stiff.
¶7 On April 21, 2014, the State filed an Information charging Sutton with Criminal Production or Manufacture of Dangerous Drugs (Count I); Criminal Possession of Dangerous Drugs (Count II); Criminal Possession of Drug Paraphernalia (Count III); Disorderly Conduct (Count IV); and Resisting Arrest (Count V). Sutton filed a motion to suppress evidence and dismiss the drug charges, arguing that the evidence was seized pursuant to an unlawful stop made in the absence of particularized suspicion, based on the contention that her presence near the marijuana in the residence could not be used to form particularized suspicion that she *1205 criminally possessed the plant on the outer porch because, under the MMA, a marijuana cardholder is legally able to possess marijuana without "imputing constructive possession on [people] who live with him in the residence." The District Court denied the motion, reasoning that Sutton's argument "inexplicitly assume[d]" that the officers could only suspect the marijuana plant belonged to Mitchell and was permissibly constructively possessed by Sutton under the MMA, when there was evidence that permitted the officers to also suspect that the plant was actually possessed by her, such as the officer's knowledge that Mitchell had been incarcerated for some time. The District Court concluded that the MMA was not a bar to forming particularized suspicion upon the record.
¶8 On August 7-8, 2015, the case was tried to a jury. The jury returned a guilty verdict on all counts. On October 5, after a sentencing hearing, the District Court imposed deferred and suspended sentences upon Sutton.
¶9 Sutton appeals.
STANDARD OF REVIEW
¶10 This Court reviews de novo a district court's conclusion as to whether sufficient evidence exists to support a jury's verdict. State v. Criswell , 2013 MT 177, ¶ 12, 370 Mont. 511, 305 P.3d 760 (citation omitted). In making this assessment, we view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. Criswell , ¶ 13 (citation omitted). We review a jury's verdict to determine whether sufficient evidence exists to support the verdict, not whether the evidence could have supported a different result. State v. Weigand , 2005 MT 201, ¶ 7, 328 Mont. 198, 119 P.3d 74. It is within the province of the jury to weigh the evidence based on the credibility of the witnesses and determine which version of events should prevail. Spottedbear , ¶ 8.
¶11 A district court's statutory interpretation constitutes a conclusion of law, which we review for correctness. State v. Sheehan , 2017 MT 185, ¶ 18, 388 Mont. 220, 399 P.3d 314 (citation omitted). "[W]hen interpreting statutes within an act, we interpret individual sections of the act in a manner that ensures coordination with the other sections of the act." State v. Pirello , 2012 MT 155, ¶ 16, 365 Mont. 399, 282 P.3d 662 (citation omitted).
DISCUSSION
¶12 1. Must Sutton's marijuana-related convictions be reversed pursuant to the exemption from prosecution contained in the Montana Medical Marijuana Act (MMA)?
¶13 Sutton makes an intertwined argument in which she challenges her marijuana-related convictions "for insufficient evidence, because she is protected from prosecution pursuant to [the MMA]." Sutton does not challenge the essential elements of the drug charges at issue, or the proof thereof directly, but rather maintains that the MMA exempted her from prosecution. Sutton's apparent argument is that the MMA exemption negates the possession element of the drug offenses, or that the District Court erred as a matter of law by denying Sutton's motion to dismiss her charges based upon the MMA, and, therefore, the evidence introduced in this case was insufficient to sustain a conviction. Unwinding the argument as we understand it, we address both the propriety of the charges as a matter of law under the MMA, as well as whether they were supported by sufficient evidence in Sutton's trial.[3]
¶14 Marijuana is a Schedule I controlled substance under § 50-32-222(4)(x), MCA. It is defined as a "dangerous drug" under § 50-32-101(6), MCA, and is generally illegal to possess or cultivate under §§ 45-9-102, -110, MCA, and § 45-10-103, MCA. However, *1206 criminal liability under these provisions has been altered for persons complying with the MMA, codified at §§ 50-46-301 through -345, MCA. The purpose of the MMA is to "provide legal protections to individuals with debilitating medical conditions" by providing a regulatory system that "allow[s] for the limited cultivation, manufacture, delivery, and possession of marijuana" by persons who are registered cardholders. See § 50-46-301, MCA. A registered cardholder may not be prosecuted by the State "solely because" the cardholder "cultivates, manufactures, possesses, or transports marijuana" in authorized amounts, or "acquires or uses" marijuana. See § 50-46-319(2), MCA. However, a card is subject to revocation, and a registered cardholder is subject to criminal prosecution, if the cardholder "allows another individual to be in possession" of the cardholder's "mature marijuana plants, seedlings, usable marijuana, or marijuana-infused products[.]" Section 50-46-330, MCA.
¶15 The MMA also provides certain legal protections to non-cardholders who are "in the presence or vicinity" of authorized marijuana use by cardholders. Section 50-46-319(5), MCA provides:
(a) An individual may not be arrested or prosecuted for constructive possession, conspiracy as provided in 45-4-102, or other provisions of law or any other offense solely for being in the presence or vicinity of the use of marijuana and marijuana infused products as permitted under this part.
(b) this subsection (5) does not prevent the arrest or prosecution of an individual who is in the vicinity of a registered cardholder's use of marijuana if the individual is in possession of or is using marijuana and is not a registered cardholder.
Thus, under subsection (5)(a), a non-cardholder may not be arrested or prosecuted for constructive possession of marijuana or other related criminal offenses solely for being in the vicinity of a registered cardholder's authorized marijuana use. However, subsection (5)(b) clarifies that a non-cardholder who is in possession of or using marijuana is not exempted from arrest or prosecution merely by being in the vicinity of a registered cardholder's authorized use.
¶16 Sutton argues the term "use of marijuana" in subsection (5)(a) is ambiguous because the MMA does not further define the scope of "use." She contends that "use" encompasses not only the ingestion of marijuana, but the cultivation and production of marijuana as well, and therefore her actions are exempted from prosecution because she was "solely ... in the presence or vicinity of" Mitchell's authorized cultivation and production of marijuana. However, even under her proffered interpretation of the term "use," Sutton's argument fails. As explained above, subsection (5)(a) exempts a non-cardholder from prosecution for being in the vicinity of a cardholder's-here, Mitchell's-authorized actions. The State charged Sutton, not with possession merely by being in the vicinity of Mitchell's authorized cultivation, but with engaging in cultivation herself, and relied on such evidence as her statements to officers that she was growing the marijuana. Subsection (5)(b) clarifies this precise circumstance: non-cardholder Sutton is not exempted from prosecution for her use or possession of marijuana merely by being in the vicinity of cardholder Mitchell's authorized use.
¶17 Sutton also argues she was not in possession of the drugs because they instead belonged to Mitchell, who was then serving a jail sentence, and that the drugs remained in his sole constructive possession while he was incarcerated. "Possession" is not separately defined by the MMA, but within the criminal code is defined as "the knowing control of anything for a sufficient time to be able to terminate control." Section 45-2-101(59), MCA. Possession of dangerous drugs may be actual or constructive. State v. Meader , 184 Mont. 32, 42, 601 P.2d 386, 392 (1979) (citations omitted). Actual possession means the contraband is in the personal custody of the person, whereas constructive possession means that the person charged with possession has dominion and control over the prohibited contraband. Meader , 184 Mont. at 42, 601 P.2d at 392. "It has long been the law in Montana that a controlled substance can be possessed jointly by two persons."
*1207 State v. Scheffelman , 225 Mont. 408, 413, 733 P.2d 348, 352 (1987). Where a controlled substance is found in a place subject to the joint dominion and control of two defendants, possession may be imputed to both defendants. Scheffelman , 225 Mont. at 413-14, 733 P.2d at 352.
¶18 Subsection (5)(a) now prevents the imputation of constructive possession to a non-cardholder "solely for being in the presence or vicinity" of the authorized use of marijuana by a registered cardholder. Section 50-46-319(5)(a), MCA. It does not prohibit prosecution of a non-cardholder for her own use or possession, under a theory of constructive possession, merely because another party jointly possesses the marijuana. To establish constructive possession, the State must prove a (1) knowing (2) control of a (3) dangerous drug for a sufficient time to be able to terminate control. State v. Neely , 261 Mont. 369, 374, 862 P.2d 1109, 1112 (1993).
¶19 In Neely , we held that the defendant, who lived with a drug dealer, was in constructive possession after drugs were found in her bedroom, she was present when drugs were used in her residence, and could have terminated control of the drugs at any time by having them taken off the premises, but failed to do so. Neely , 261 Mont. at 374, 862 P.2d at 1112. In Meader , the defendant argued insufficient evidence existed to convict him from the drugs found in the house because the house was leased in his girlfriend's name and he was not in physical possession of any drugs when the officers searched him. We determined that the defendant had actual dominion and control over the house, and by extension, had constructive possession of the drugs. Meader , 184 Mont. at 43-44, 601 P.2d at 392.
¶20 Adding the subsequently enacted MMA to these holdings, Sutton was in actual possession of her jointly-owned house, but the MMA exemption operates to negate the imputation to her of constructive possession of the marijuana therein based solely on Sutton being in the vicinity of Mitchell's authorized use there. See § 50-46-319(5)(a), MCA. However, Sutton's cultivation activities can constitute her own knowing control of the marijuana, and she may be prosecuted for being "in possession of or [ ] using marijuana," even if authorized use by another is also occurring. Section 50-46-319(5)(b), MCA.
¶21 Under subsection 5(a), Sutton was not exempted from prosecution here because she was not "solely ... in the presence or vicinity" of the authorized use of marijuana by a registered cardholder. Rather, she engaged in production, exercised control, and possessed the marijuana by her own cultivation activities. Under subsection (b), Sutton is expressly subject to prosecution as a non-cardholder "in possession" of marijuana, despite being in the vicinity of a cardholder's authorized use. The District Court was correct in denying Sutton's motion to dismiss the charges under the MMA.
¶22 The State presented sufficient evidence from which a rational jury could convict Sutton on the possession and production offenses, based on: (1) the testimony from deputies who visited Sutton's home; (2) Estevez' recorded audio of the deputies' visit to Sutton's house, played for the jury, containing Sutton's own statements that she was cultivating and producing marijuana; and (3) physical evidence seized from Sutton's home indicating a grow operation. The District Court allowed Sutton to present an MMA defense and instructed the jury on the MMA exemption, as well as actual and constructive possession.
¶23 2. Was Sutton's conviction of resisting arrest supported by sufficient evidence?
¶24 Sutton argues that simply making her body rigid and being "insufficiently cooperative" was not enough evidence to support her conviction under the resisting arrest statute. Sutton contends she was "resisting pain" and "did not understand that she was being placed under arrest." The State argues the testimony of the officers supported the jury's conclusion that Sutton resisted arrest.[4]
*1208 ¶25 Section 45-7-301, MCA provides, in pertinent part:
Resisting arrest. (1) A person commits the offense of resisting arrest if the person knowingly prevents or attempts to prevent a peace officer from effecting an arrest by:
(a) using or threatening to use physical force or violence against the peace officer or another; or
(b) using any other means that creates a risk of causing physical injury to the peace officer or another.
¶26 Section 45-7-301(a), MCA, criminalizes the knowing use of, or threat to use, physical force or violence against an officer to prevent an arrest. "Violence" as a legal term is generally defined as "unjust or unwarranted use of force, usually accompanied by fury, vehemence, or outrage." Black's Law Dictionary 1564 (7th ed. 1999). Contrary to Sutton's assertion that she did not know she was being placed under arrest, the State presented Estevez' testimony that he warned she would be placed under arrest, and then advised her he was placing her under arrest. Mesman and Estevez testified that Sutton forcefully resisted their efforts to restrain and arrest her, including "forcefully and actively pulling away," pushing off a library table with her free hand, physically resisting the placement of handcuffs, pulling away after handcuffs were placed, making her body rigid and stiff while being escorted out of the library, and loudly yelling with abusive language and profanities, requiring Mesman to assist Estevez to obtain control over Sutton and requiring the officers to jointly engage in a physical struggle to place the handcuffs and effectuate arrest. Considering this evidence, which the jury was entitled to deem credible, Spottedbear , ¶ 8, in a light most favorable to the State, a rational trier of fact could have found that Sutton resisted arrest by physical force or violence.
¶27 Affirmed.
We concur:
MIKE McGRATH, C.J.
JAMES JEREMIAH SHEA, J.
LAURIE McKINNON, J.
BETH BAKER, J.

Estevez wore an audio recording device during this visit, which was admitted as an exhibit at trial and played for the jury.

As a medical marijuana cardholder, Mitchell was entitled to possess up to one ounce of consumable marijuana, 4 mature plants, and 4 seedlings. See § 50-46-319(1)(a)-(b), MCA. Our opinion does not concern Mitchell's compliance with the MMA or resolve any other legal issue related to Mitchell. During his investigation, Estevez interviewed Mitchell regarding Sutton's arrest. Estevez testified at trial that when he showed Mitchell pictures of the 18 seedlings seized at the house, Mitchell "shot back into the seat of his chair and his eyes got big," and stated, "those seedlings were not his." During his trial testimony, Mitchell countered that "I pretty much lied in the whole interview." It was the jury's task to assess witness credibility, and we determine only whether sufficient evidence existed for a factfinder to convict based on the evidence of Sutton's possession. See State v. Spottedbear , 2016 MT 243, ¶ 8, 385 Mont. 68, 380 P.3d 810.

Although moving pre-trial to suppress evidence and dismiss the charges based on a lack of particularized suspicion, given the MMA, Sutton did not move for a directed verdict after the presentation of the State's case-in-chief based on insufficient evidence. See § 46-16-403, MCA. However, sufficiency of the evidence may be challenged on appeal even if the issue is not raised by the defendant at trial. State v. Skinner , 2007 MT 175, ¶ 21, 338 Mont. 197, 163 P.3d 399.

The State also argues that, while this Court has not specifically addressed whether "trying to pull away" constitutes the use of force, other courts with similar statutes have deemed this action to be resisting arrest, citing Finley v. State , 449 S.W.3d 145, 150-51 (Tex. App. 2014) (a rational trier of fact could have found that the defendant violated the resisting arrest statute prohibiting "using force" against a police officer, by actively pulling away from the officers as they attempted to arrest the defendant); see also State v. Dudley , 475 S.W.3d 712, 716 (Mo. Ct. App. E.D. 2015) (concluding sufficient evidence exists from which a reasonable juror could have found the defendant violated the resisting arrest statute by using "physical force" by stiffening his arms and pulling his hands away underneath his body while being arrested). However, considering the other evidence in the record here, we need not address this precise question to resolve the appeal.