FILED

09/14/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0165

DA 20-0165

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 230

CITY OF BOZEMAN,

  Plaintiff and Appellee,

 v.

JACOB ANDREW HOWARD,

  Defendant and Appellant.

APPEAL FROM:  District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC-19-372B
Honorable Rienne H. McElyea, Presiding Judge

COUNSEL OF RECORD:

  For Appellant:

  Caitlin Boland Aarab, Boland Aarab PLLP, Great Falls, Montana

  For Appellee:

  Austin Knudsen, Montana Attorney General, Tammy K Plubell, Appellate Services Bureau Chief, Katie F. Schulz, Assistant Attorney General, Helena, Montana

  Gregory S. Sullivan, Bozeman City Attorney, Ed Hirsch, Assistant City Attorney, Bozeman, Montana

    Submitted on Briefs: July 28, 2021

      Decided: September 14, 2021

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    Jacob Andrew Howard appeals the judgment of the Montana Eighteenth Judicial District Court, Gallatin County, affirming his conviction by a jury in Bozeman Municipal Court for misdemeanor resisting arrest. Howard also appeals the Municipal Court's denial of his motion for an *in camera* review of the arresting officer's personnel file for incidents of excessive use of force. We affirm.

¶2    Howard presents the following issues for review:

1. *Whether the Municipal Court abused its discretion when it denied Howard's motion for an in camera review of the arresting officer's personnel file to determine whether it contained information of prior instances of excessive use of force.*

2. *Whether the District Court correctly determined that the City presented sufficient evidence to convict Howard of resisting arrest.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    In November 2018, Jasmine Sands dated Howard for four days before she ended the relationship. Sands testified that Howard was verbally aggressive and controlling during their short relationship. After ending their relationship, Sands met with Bozeman Police Department (BPD) Officer Jeremy Tankink to get help recovering her belongings from Howard. On November 20, 2018, while helping facilitate the return of Sands's belongings, Officer Tankink suggested to Howard that he stay away from Sands, and Howard agreed. On the evening of November 24, 2018, while Sands was walking along Rouse Avenue in Bozeman, Howard began following her in his car and imploring her to talk to him. Sands initially ignored Howard but eventually told him she was walking to the Warming Center.

2

He offered her a ride to the Warming Center and told her to get in his car. She declined his offer and told him to leave her alone. Howard ignored Sands's requests and continued following Sands and telling her to get in his car. Howard's conduct made Sands uncomfortable, and she called 911. Sands described Howard and the vehicle he was driving to the dispatcher. As heard on the 911 call, Sands repeatedly told Howard to leave her alone. BPD Officers Thomas Lloyd and Ryan Jeppson responded to the call. Officer Lloyd was the first to encounter Howard near a bar on Rouse Avenue. Officer Lloyd was in uniform and driving a marked patrol car when he pulled behind Howard's vehicle with his overhead lights activated and shone a spotlight on Howard's vehicle.

¶4 Before Officer Lloyd said anything to him, Howard got out of his car and started to approach Officer Lloyd's vehicle. As Howard began stepping out of his vehicle, Officer Lloyd immediately instructed Howard to place his hands up. Howard questioned the officer's commands but eventually raised his hands after being told three times to place his hands up. Officer Lloyd next instructed Howard to turn around and walk backwards toward the sound of Officer Lloyd's voice. Howard did so but lowered his hands in the process. Howard's lack of compliance escalated Officer Lloyd's safety concerns, so he drew his handgun and again gave Howard verbal commands to "put [his] hands up." Howard raised his hands out to the side and asked Officer Lloyd an inaudible question, to which Officer Lloyd responded, "Because I told you to! Do it now!" Howard remained stationary with his hands outstretched from his sides and then moved them to his waist. He

3

asked another inaudible question before Officer Lloyd shouted, "Put your hands up! What don't you understand?" Because Howard continued to question Officer Lloyd's commands and did not place his hands where Officer Lloyd could see them, Officer Lloyd told Howard to kneel on the ground. With his gun holstered, Officer Lloyd grabbed Howard's wrists and held them behind Howard's back. Officer Lloyd testified that he had to use a leg sweep to bring Howard to the ground after Howard did not comply with his command to kneel. He further testified that Howard continued to physically resist, flail about, and struggle with him while Howard was on the ground. Officer Lloyd was able to put one handcuff on after pushing Howard face-first onto the ground several times. Officer Jeppson arrived at the scene and the two officers were able to secure and handcuff Howard. Officer Jeppson transported Howard to the hospital after the incident to have him medically cleared for incarceration. Howard was cited with the following misdemeanors: partner family member assault, stalking, obstructing a peace officer, and resisting arrest. The State later dismissed the partner family member assault. At his March 20, 2019 omnibus hearing, Howard indicated his intent to assert the affirmative defense of justifiable use of force.

¶5 Howard filed a motion to compel the City to produce Officer Lloyd's personnel files for an *in camera* inspection based on Montana's "right to know" under Article II, Section 9, of the Montana Constitution. Howard alleged that he and another witness would testify that Officer Lloyd was unjustified in using excessive force on Howard and that the officer had lied about Howard acting aggressively toward him. Howard reasoned that if Officer Lloyd had a history of using excessive force, it would support the officer's motive

4

to lie about the events during Howard's arrest. Howard claimed a substantial need existed for the Municipal Court to review the officer's personnel file *in camera* to determine if such evidence existed. Howard also asked the Municipal Court to review the files for evidence of the officer's untruthfulness.

¶6 The City did not object to an *in camera* review of Officer Lloyd's personnel file for instances of untruthfulness. However, it opposed Howard's motion as to alleged incidents of excessive use of force. The City argued that, regardless of whether the officer's use of force against Howard was "excessive," his request was not supported by the principles of *Brady v. Maryland*, 373 U.S. 83 (1963), or Montana's criminal discovery statute, as Howard failed to establish a substantial need for the alleged information because he offered only hypothetical claims. The City argued Howard's request was premised on the erroneous belief that it was relevant whether Officer Lloyd "was justified in using excessive force" against Howard because, pursuant to §§ 45-7-301(2), MCA, (resisting arrest), and -302(2), MCA, (obstructing a peace officer), an officer's decision to use any force may not be used as a defense to either resisting arrest or obstruction of justice. In his reply, Howard amended his request for relief to rely upon § 46-15-322(1)(e) and (5), MCA, and *Brady*. Howard asserted prior instances of excessive force had exculpatory value and that he had a substantial need to examine Officer Lloyd's personnel file to support his claim that he was "trying to protect and defend himself against an unlawful assault."

¶7 After hearing arguments, the Municipal Court ruled that it would conduct an *in camera* review of Officer Lloyd's personnel file solely for instances of untruthfulness.

5

In denying Howard's motion as to instances of excessive force, the Municipal Court reasoned that Howard failed to provide sufficient basis to overcome Officer Lloyd's right to privacy, had not presented evidence that he was aware of any prior uses of excessive force by Officer Lloyd, and had not provided any compelling theory of admissibility. The Municipal Court's review found no instances of untrustworthiness. Howard was subsequently convicted by a jury of stalking, resisting arrest, and obstructing a peace officer. On appeal, the District Court affirmed Howard's convictions, concluding that the Municipal Court's orders were correctly entered, and that sufficient evidence existed to support Howard's conviction. Howard appeals.

**STANDARDS OF REVIEW**

¶8 When a case originates in a municipal court, the district court functions as an intermediate appellate court. *City of Bozeman v. Lehrer*, 2020 MT 55, ¶ 6, 399 Mont. 166, 459 P.3d 850 (citing §§ 3-5-303, 3-6-110, MCA). "Upon subsequent appeal to [the Montana Supreme Court], this Court reviews the case 'as if the appeal originally had been filed in this Court.'" *Lehrer*, ¶ 6 (quoting *City of Bozeman v. Cantu*, 2013 MT 40, ¶ 10, 369 Mont. 81, 296 P.3d 461). We examine the record "independently of the district court's decision," and the ultimate determination remains whether the district court "reached the correct conclusions under the appropriate standards of review." *State v. Davis*, 2016 MT 102, ¶ 31, 383 Mont. 281, 371 P.3d 979 (quoting *Stanley v. Lemire*, 2006 MT 304, ¶ 26, 334 Mont. 489, 148 P.3d 643).

¶9 Evidentiary rulings and rulings on discovery motions are reviewed for an abuse of discretion. *City of Bozeman v. McCarthy*, 2019 MT 209, ¶ 12, 397 Mont. 134, 447 P.3d 1048. A lower court abuses its discretion if it "exercises granted discretion based on a mistake of law, erroneous finding of material fact, or otherwise acts arbitrarily, without conscientious judgment or in excess of the bounds of reason, resulting in substantial injustice." *McCarthy*, ¶ 12.

¶10 This Court reviews de novo a district court's conclusion as to whether sufficient evidence exists to support a jury's verdict. *State v. Sutton*, 2018 MT 143, ¶ 10, 391 Mont. 485, 419 P.3d 1201. In making this assessment, we view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Sutton*, ¶ 10.

**DISCUSSION**

¶11 *1. Whether the Municipal Court abused its discretion when it denied Howard's motion for an in camera review of the arresting officer's personnel file to determine whether it contained information of prior instances of excessive use of force.*

¶12 Howard first argues that the Municipal Court's denial of his motion potentially deprived him of exculpatory information that may have proven relevant to his defense. Howard next argues that the Municipal Court abused its discretion by denying his motion for an *in camera* review of Officer Lloyd's personnel file for prior instances of excessive force, contending that the Municipal Court applied the incorrect standard for disclosure of information. The State maintains that Howard did not present a due process claim or allege

7

the City failed to disclose exculpatory information in the Municipal Court or in the District Court. On appeal, Howard argues that he "requested an *in camera* inspection by the Court for *Brady/Giglio* material." However, Howard's request based on *Brady/Giglio* and § 46-15-322(1)(e), MCA, was raised for the first time in Howard's reply brief filed in the Municipal Court. Further, Howard did not raise a *Brady/Giglio* argument on appeal to the District Court. Instead, Howard focused on his claim that a substantial need existed under § 46-15-322(5), MCA. Accordingly, Howard has failed to preserve any *Brady/Giglio* argument that may have existed. The Court has "no obligation to formulate saving arguments" or to further develop Howard's passing references to potential *Brady/Giglio* information, or similar information under § 46-15-322(1)(e), MCA, and we decline to address those matters further. *McCarthy*, ¶ 15.

¶13    The only issue remaining is whether the Municipal Court abused its discretion when it determined that Howard failed to present a substantial need to justify an *in camera* review of Officer Lloyd's personnel file for instances of excessive force. *McCarthy* guides our analysis. In *McCarthy*, Officer Lloyd's personnel files again found themselves at the center of a discovery dispute. *McCarthy,* ¶ 6. McCarthy filed a motion to compel discovery of Officer Lloyd's personnel file following an arrest that resulted in McCarthy's hospitalization. *McCarthy*, ¶¶ 5-7. The Municipal Court denied McCarthy's motion, concluding that he failed to demonstrate a substantial need for the personnel records. *McCarthy*, ¶ 8. On appeal, we affirmed the Municipal Court, noting that "in explicitly denying McCarthy's motion with reference to the officers' rights to privacy, the

8

Municipal Court implicitly rejected or subordinated his predicate assertion of 'substantial need' under § 46-15-322(5), MCA." *McCarthy*, ¶ 16. We further noted that, while McCarthy's "purpose was to discover any prior history of the arresting officers' use of excessive force," he had failed to "particularly articulate or show what legitimate 'substantial need' he had for that information . . ." *McCarthy*, ¶ 16. Howard correctly notes that he followed the appropriate procedure to request a review of Officer Lloyd's file. In denying Howard's motion, the Municipal Court remarked that Howard "needs to provide reasons here to overcome the privacy issues that do arise" and that "unless the defendant is aware of some excessive force issues, [the evidence from Officer Lloyd's personnel file] would not become admissible." As in *McCarthy,* the Municipal Court denied Howard's motion with reference to the officer's right to privacy. In so doing, Howard's assertion of a substantial need was implicitly rejected. We reject Howard's argument that the Municipal Court did not apply the appropriate standard for disclosure of information pursuant to § 46-15-322(5), MCA.

¶14 Criminal prosecutors have an "affirmative duty to disclose all information and materials known to the prosecutor that are favorable to the accused and constitutionally material to the determination of his or her guilt or punishment." *McCarthy*, ¶ 14; *Brady*, 373 U.S. at 87-88, 83 S. Ct. at 1196-97; *Giglio v. United States*, 405 U.S. 150, 153-55, 92 S. Ct. 763, 766 (1972). Montana imposes an independent, but corollary, obligation on prosecutors to make available upon request all material or information that tends to mitigate or negate the defendant's guilt as to the offense charged or that would

9

potentially reduce the defendant's sentence. Section 46-15-322(1)(e), MCA. These obligations do not, however, "create a general constitutional discovery right entitling an accused to unfettered access to sift through all information available to the government that might be helpful at trial or sentencing." *McCarthy*, ¶ 14. Independent of a prosecutor's *Brady/Giglio* duty, § 46-15-322(5), MCA, provides that upon motion showing that the defendant has "substantial need" for additional material or information not otherwise provided and for which the defendant is unable to obtain the substantial equivalent without undue hardship, a court may order that the information be made available.

¶15 Regarding nonexculpatory information such as information used for impeachment, the scope of the required disclosure is limited to constitutionally material evidence tending to show that a prosecution witness is unreliable, biased, has an interest or motive to testify falsely, or has a character for untruthfulness. *United States v. Bagley*, 473 U.S. 667, 676-77, 105 S. Ct. 3375, 3380-81 (1985); *Giglio*, 405 U.S. at 154-55, 92 S. Ct. at 766; *McCarthy*, ¶ 14. Nonexculpatory information is constitutionally material only if nondisclosure would be reasonably likely to "undermine confidence" in the fairness of the trial or sentencing determination under the totality of circumstances. *Bagley*, 473 U.S. at 678-82, 105 S. Ct. at 3380-81; *Giglio*, 405 U.S. at 154, 92 S. Ct. at 766; *McCarthy*, ¶ 14. Nonexculpatory evidence is constitutionally material only where the subject witness provides "key 'evidence linking the defendant(s) to the crime, or where the likely impact on the witness's credibility would . . . undermine[] a critical element of the

10

prosecution's case.'" *McCarthy*, ¶ 14 (quoting *United States v. Payne*, 63 F.3d 1200, 1210 (2d Cir. 1995)).

¶16     Howard asserts that evidence of prior excessive force by Officer Lloyd would prove necessary to impeach Officer Lloyd. Howard reasons that if there are instances of prior excessive force, Officer Lloyd would have a motive to be untruthful in his testimony about the offense. Howard further contends that he was denied access because he could not demonstrate, prior to review of the file, whether the file contained the information he sought. Preliminarily, we note that the BPD has handled these proceedings in a manner similar to *McCarthy*, inasmuch as the BPD deputy chief submitted a letter stating that he had reviewed Officer Lloyd's personnel file and did not find any information relevant to instances of untruthfulness or excessive or unjustified use of force. This suggests that no information was placed in Officer Lloyd's file relative to the proceedings in *McCarthy*, which occurred prior to the instant case. We also observe that our decision in *McCarthy*, wherein we set forth the injuries McCarthy sustained during his arrest by Officer Lloyd and other officers—multiple fractured ribs and a collapsed lung—was decided after the Municipal Court's decision in this matter. The parallels between the facts in *McCarthy* and the facts here are noteworthy. In *McCarthy*, Officer Lloyd "ordered McCarthy to stop and raise his hands . . . [and] [w]hen McCarthy was slow to respond, Officer Lloyd threatened to shoot him if he did not comply." *McCarthy*, ¶ 4. Officer Lloyd further testified that "McCarthy then tensed up and attempted to pull free . . . [and] that, as McCarthy continued to struggle to break free, [Officer Lloyd] punched McCarthy several

11

times in the midsection to terminate his resistance and force him to submit to arrest." *McCarthy*, ¶ 5. The Municipal Court and Howard did not have the benefit of our decision in *McCarthy*. Finally, we discern Howard's argument to be not that the use of excessive force in and of itself is relevant, but that any prior instances of excessive force by Officer Lloyd would be relevant as impeachment to demonstrate that Officer Lloyd would have a motive to be untruthful in his testimony about the offense. This distinction is well-taken because an officer's use of excessive force to make an arrest is not a defense to resisting arrest. With these observations in mind, we turn to whether Officer Lloyd's personnel file should have been examined for prior instances of excessive force.

¶17 In *City of Billings v. Peterson*, we affirmed a district court's conclusion that no substantial need existed under § 46-15-322(5), MCA, when the basis of the denied request was for "cross-examination purposes." 2004 MT 232, ¶ 42, 322 Mont. 444, 97 P.3d 532. On appeal, Peterson contended that he remained unable to specify how he would use the information until he obtained it. *Peterson*, ¶ 43. In concluding that Peterson failed to establish a substantial need, we remarked that "[t]his argument ignores the plain language of § 46-15-322(5), MCA, which requires a motion demonstrating substantial need." *Peterson*, ¶¶ 43-44. Likewise, Howard contends that the personnel file is relevant for cross-examination purposes to impeach Officer Lloyd's credibility. Howard further argues that he cannot demonstrate a substantial need until he reviews the file. These arguments ignore the plain language of § 46-15-322(5), MCA. While this Court, as well as the District Court and the Municipal Court, are not privy to BPD personnel policy and have no

information regarding whether or why circumstances such as those underlying McCarthy's arrest were not addressed or documented in BPD personnel files, the dispositive fact remains that Howard was unable to demonstrate a substantial need for particular information in Officer Lloyd's personnel file at the time he made his request. Howard did not present any evidence to the Municipal Court that Officer Lloyd was unreliable, biased, untruthful, or had a motive to testify falsely. Howard has failed to demonstrate—particularly given the statutory language of §§ 45-7-301(2) and 45-3-108, MCA, which prohibit as a defense that the arrest was unlawful or the use of force to resist an arrest—that the nonexculpatory impeachment information was constitutionally material and that failure to make it available would undermine the confidence in the fairness of his trial. Accordingly, under the facts present here, the Municipal Court did not abuse its discretion in denying Howard's motion for an *in camera* review of Officer Lloyd's personnel file for instances of excessive force.

¶18   *2. Whether the District Court correctly determined that the City presented sufficient evidence to convict Howard of resisting arrest.*

¶19   Howard argues that insufficient evidence existed to support his conviction for resisting arrest. Specifically, Howard contends that he could not have acted knowingly because he believed he was acting to prevent an unjustified physical assault and was unaware that Officer Lloyd was attempting to arrest him. The State argues that the evidence presented at trial supported the jury's conclusion that Howard acted knowingly.

¶20   Section 45-7-301(1)(a), MCA, provides, pertinently, that a person "commits the offense of resisting arrest if the person knowingly prevents or attempts to prevent a

13

peace officer from effecting an arrest by using or threatening to use physical force or violence against the peace officer or another." A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when the person is aware of the person's own conduct or that the circumstance exists. Section 45-2-101(35), MCA. Further, "[i]t is no defense to [the charge of resisting arrest] that the arrest was unlawful, if the peace officer was acting under color of the officer's official authority." Section 45-7-301(2), MCA. This language reinforces § 45-3-108, MCA, which prohibits the use of force to resist an arrest "that the person knows is being made . . . by a peace officer . . . even if the person believes that the arrest is unlawful and the arrest in fact is unlawful." The prohibition on use of force in resisting arrest arises from the view that "the common law rule that an illegal arrest could be resisted lawfully . . . encouraged resistance and breaches of the peace." *State v. Laughlin*, 281 Mont. 179, 182, 933 P.2d 813, 815 (1997).

¶21   Howard acknowledges that "in some situations a person could reasonably be expected to perceive that he is under arrest without hearing ['you are under arrest']," but argues that this was not such a situation. We disagree. The record provides substantial evidence to support the jury's finding that Howard could reasonably perceive that he was under arrest and therefore acted knowingly. The State provided evidence that Howard had been warned by Officer Tankink to stay away from Sands. Howard disregarded that advice and approached Sands, prompting Sands to call 911 and provide a description of Howard. Regardless of whether Howard was aware that Sands called 911, he was aware that he had

14

been warned to stay away and that Sands had called someone. Moreover, while Howard did not admit that he knew Sands had called the police, he did admit that he assumed Sands would call the police and that he would have to speak with law enforcement as a result. Officer Lloyd responded to Sands's 911 call and pulled behind Howard's vehicle in a marked patrol vehicle with his overhead lights activated. Howard immediately exited his vehicle, prompting Officer Lloyd to shout several commands. Howard failed to comply with those commands. Faced with an armed, uniformed police officer exiting a patrol car and shouting commands, a person could reasonably perceive that they are or will soon be under arrest. Failure to comply with those commands would, inevitably, lead to an arrest. Howard's trial testimony indicates that, at a minimum, he was aware that Sands may have called law enforcement. Officer Lloyd's appearance confirmed Howard's assumptions. At that moment, with the totality of the circumstances indicating that Officer Lloyd was clearly a police officer and having at least some awareness of the reason for his presence, Howard acted knowingly and resisted Officer Lloyd's commands.

¶22 Howard's argument that he could not have resisted arrest because he did not know that Officer Lloyd was attempting to arrest him would inevitably lead to a troubling logical conclusion that this Court is not prepared to reach. As this Court stated clearly in *Laughlin*, "[N]o individual in the State of Montana is ever justified in using force to resist an arrest by a police officer, regardless of whether the arrest was lawful or not." 281 Mont. at 182, 933 P.2d at 814-15. Similarly, no individual in the State of Montana is ever justified in using force simply because they are unaware that they are being arrested. While justifiable

15

use of force may be a defense to a charge of, for example, assault on a peace officer, that issue is not present here. *State v. Courville*, 2002 MT 330, ¶¶ 35-40, 313 Mont. 218, 226, 61 P.3d 749. Instead, civil and criminal remedies should be pursued, rather than self-help. *See Laughlin*, 281 Mont. at 182, 933 P.2d at 815.

¶23 Howard does not contest the sufficiency of the evidence as to the remaining elements of the offense. Therefore, the Court will not address the remaining elements. The District Court correctly determined that sufficient evidence existed to support Howard's conviction for resisting arrest.

## CONCLUSION

¶24 Howard failed to demonstrate a substantial need for an *in camera* review of Officer Lloyd's personnel file for instances of excessive force. Sufficient evidence was presented to the jury to support every element of the offense of resisting arrest. Howard's conviction is affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE

Chief Justice Mike McGrath, concurring and dissenting.

¶25 While I agree with the majority on Issue One, I dissent from the majority Opinion on Issue Two.

16

¶26   In my view the officer was far too aggressive in his response to the situation he faced. The video from Officer Lloyd's police vehicle shows Officer Lloyd's initial contact quickly escalated to loud and vigorous demands directed at Howard, who was clearly confused and nonthreatening. Officer Lloyd drew his weapon, and his speech grew increasingly angry. The confrontation became physical as Officer Lloyd attempted to place handcuffs on Howard. Officer Lloyd kicked Howard's feet from under him, causing Howard to fall, and body-slammed him face first onto the pavement several times, injuring Howard to the extent that he was taken for emergency health care following his arrest.

¶27   Section 45-7-301, MCA, specifically requires a person to knowingly prevent or attempt to prevent a peace officer from effecting an arrest by "(a) using or threatening to use physical force or violence against the peace officer or another; or (b) using any other means that creates a risk of causing physical injury to the peace officer or another." Section 45-7-301(1), MCA.

¶28   In *State v. Sutton*, 2018 MT 143, ¶ 26, 391 Mont. 485, 419 P.3d 1201, this Court cited Black's Law Dictionary (7th ed. 1999) to define the term "violence" in § 45-7-301(1)(a), MCA, as "unjust or unwarranted use of force, usually accompanied by fury, vehemence, or outrage." Here, the City was unable to demonstrate that Howard engaged in any violence. In my view there was insufficient evidence to support Howard's conviction of resisting arrest. *But see State v. Carter*, 285 Mont. 449, 948 P.2d 1173 (1997).

¶29    While there is no doubt that officers on the street are often forced to engage in dangerous situations, especially when making an arrest, here the video demonstrates Officer Lloyd instigated the aggressive behavior to the extent that Howard did not have the opportunity to resist arrest.

¶30    I concur as to Issue One and dissent as to Issue Two.

/S/ MIKE McGRATH