FILED

08/01/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0380

DA 21-0380

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 148N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

MARY DARLEAN WRIGHT,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and For the County of Fergus, Cause No. DC 2019-32
Honorable Jon A. Oldenburg, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Katie F. Schulz, Helena,
Montana

          Kent Sipe, Fergus County Attorney, Jean Adams, Deputy County
Attorney, Lewistown, Montana

Submitted on Briefs:  June 21, 2023

Decided:  August 1, 2023

Filed:

                               Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion.  It shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Mary Wright appeals her conviction for conspiracy to commit evidence tampering. Wright argues that the Tenth Judicial District Court erred in denying her motion to dismiss for insufficient evidence.[1]  Wright alternatively argues that the court abused its discretion when it prevented her from obtaining exculpatory evidence from the attorney for her deceased alleged coconspirator.  Because the State presented sufficient evidence of a conspiracy to send the case to the jury and because the trial court did not deny Wright information she needed to present a full defense, we affirm Wright's conviction.

¶3      On September 29, 2018, Wright and her friend Alan Williams left Wright's home and drove separate cars from Moore to Lewistown.  A city police officer stopped Wright for speeding but let her go without citation.  A sheriff's deputy stopped Williams for crossing the center line and not having an illuminated license plate.  Based on evidence

---

[1] After the State rested, Wright moved "for a directed verdict pursuant to Montana Code Annotated 46-16-403."  Such a motion is better referred to as a motion to dismiss for insufficient evidence, and the Court will do so in this Opinion. *See* Section 46-16-403, MCA ("When, at the close of the prosecution's evidence or at the close of all the evidence, the evidence is insufficient to support a finding or verdict of guilty, the court may, on its own motion or on the motion of the defendant, dismiss the action and discharge the defendant."); *State v. McWilliams*, 2008 MT 59, ¶ 36, 341 Mont. 517, 178 P.3d 121.

discovered during a pat-down search, the deputy arrested Williams for possession of dangerous drugs, in violation of § 45-9-102(1), MCA.

¶4     The following day, Williams made several calls from the Fergus County jail. First, he called his mother—Marjorie Andrus—at 12:41 p.m. Andrus told her son that she was gathering various items for him, including his cane and inhaler, and was going to the store to get his prescription. Williams described being stopped and shared that Wright—also a longtime friend of Andrus's—was stopped the same day. Andrus indicated that she already had spoken with Wright about her stop. Williams and Andrus then had the following exchange:

> Williams: Did you clean my room up?
>
> Andrus: As well as I could. I didn't find nothing.
>
> Williams: Under my pillows, did you get that stuff out from under my pillows?
>
> Andrus: Yeah.
>
> Williams: Okay.
>
> Andrus: The little square thing?
>
> Williams: Yeah.
>
> Andrus: Yeah.
>
> Williams: Okay, okay. That's good.

After discussing other topics, the two concluded the call.

¶5     Williams then called Wright at 1:10 p.m. Williams and Wright discussed their respective stops and then had the following exchange:

3

Williams: But, I need you to do me a favor and go -- and when Mom comes home later on this evening, go over to the house and go through my bedroom with a fine-toothed comb and fix it up, do the best you can with it and look for anything that shouldn't be there.  I don't know if my --

Wright: Okay.

Williams: -- PO is coming up to the house or not[.]  Mom -- mom went through there.

Wright: I'm going to put that little box in the shed and lock it.

Williams: Which box?

Wright: You know what I'm talking about?  The safe.

Williams: Huh? Oh, my safe?

Wright: Your safe, yeah.

Williams: There's nothing in that.

Wright: Put it in the shed.  Okay, good.

Williams: There's nothing in it.

Wright: Good.

Williams: Mom -- mom already got my safe, got my pills out -- somebody got my Somas.

.    .    .

Williams: Well, mom already -- mom said she went through there.

Wright: Got to --

Williams: She's got that little square thing for you.

Wright:  Yeah, okay.

4

Williams called his mother again later that afternoon. She said she was home again. Williams asked for help in getting the jail to administer his prescription. Williams also explained that he had another cell phone in a black bag at home that had "a bunch of text messages on it that aren't good."

¶6 An officer at the jail turned recordings of Williams's calls over to the Fergus County Sheriff's Office. Based on a belief that the calls demonstrated that Williams, Andrus, and Wright agreed to destroy or hide evidence from law enforcement before an imminent investigation, the sheriff's office secured and executed search warrants for Williams's and Wright's homes on October 3, 2018. Officers found a safe in Williams's room but no contraband inside. In a padlocked shed outside the house, officers located a closed suitcase with another bag inside of it that contained a small square scale used to weigh methamphetamine.[2] In Wright's home, officers discovered drugs and drug paraphernalia. The State offered Wright a plea deal to defer prosecution on conspiracy charges if she pleaded guilty to possession. Wright declined and went to trial. A jury convicted her of three possession charges. The State then charged Wright with conspiracy to commit evidence tampering. *See* §§ 45-4-102, MCA ("Conspiracy"); 45-7-207, MCA ("Tampering With Or Fabricating Physical Evidence").

¶7 Both Williams and Andrus died before Wright's conspiracy trial. Wright's counsel filed a "Motion for Gillham Order" to allow Andrus's attorney, Layne Scheveck, to share

---

[2] Williams's possession charges were dismissed after the court, finding no grounds for the pat-down search of Williams during the traffic stop, suppressed this evidence as fruit of the poisonous tree.

information from his deceased client without violating the Montana Rules of Professional Conduct. Wright's counsel sought information that Andrus "would have shared regarding [Wright] and her contact with [Wright] from the moment those jail calls took place to the moment those search warrants were served on the parties." The State opposed the motion, arguing that a *Gillham* order would be incorrect procedurally and that, regardless, the court should not grant it because Scheveck's testimony would be inadmissible hearsay. The District Court held a hearing where Scheveck testified. Scheveck shared that he spoke with Andrus four to five times and that he believed she would have wanted him to share information with Wright's attorney. Scheveck said that the information he had was exculpatory for Wright and that he had taken notes of his conversations with Andrus. Upon questioning from the court, Scheveck admitted that he did not know if he had information that Wright did not know and that he learned the information after Wright was charged and after he became Andrus's attorney. Citing concerns about cross-examination, the court requested an in camera inspection of Scheveck's writings regarding his conversations with Andrus. Scheveck produced a two-page timesheet with notations. Finding "no exculpatory or inculpatory information" in the timesheet, the court denied Wright's motion.

¶8     Wright's jury trial for conspiracy lasted three days. After the State rested, Wright moved to dismiss for insufficient evidence. Citing *State v. Black*, 2003 MT 376, 319 Mont. 154, 82 P.3d 926, Wright argued that a defendant may not be found guilty of an offense based on testimony of another person responsible for the same offense unless that other person's testimony is corroborated by other evidence tending to connect the defendant with

6

the commission of the offense. Pointing out that her alleged coconspirators were deceased, Wright argued that the State had not presented substantial evidence beyond their phone calls connecting Wright to a conspiracy. The District Court denied the motion, reasoning that *Black* did not apply because the jail calls were not testimony and that the State had presented sufficient evidence for the case to go forward. The jury found Wright guilty, and the court sentenced her to the Department of Corrections for three years with a recommendation for conditional release.

¶9      We review de novo a denial of a motion to dismiss for insufficient evidence. *State v. Ohl*, 2022 MT 241, ¶ 6, 411 Mont. 52, 521 P.3d 759. We review for abuse of discretion a district court's rulings on discovery motions. *City of Bozeman v. Howard*, 2021 MT 230, ¶ 9, 405 Mont. 321, 495 P.3d 72.

**Sufficiency of the Evidence**

¶10      Wright argues that the District Court erroneously denied her motion to dismiss for insufficient evidence of conspiracy. "To succeed on a motion to dismiss for insufficient evidence, a defendant must show that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could not find the essential elements of the crime beyond a reasonable doubt." *Ohl*, ¶ 8; § 46-16-403, MCA. Section 45-4-102, MCA, defines the elements of conspiracy:

> A person commits the offense of conspiracy when, with the purpose that an offense be committed, the person agrees with another to the commission of that offense. A person may not be convicted of conspiracy to commit an offense unless an act in furtherance of the agreement has been committed by the person or by a coconspirator.

¶11 Upon review of the record, we conclude that the District Court correctly denied Wright's motion to dismiss for insufficient evidence. By presenting the jail call in which Williams asked Wright to go through his bedroom with a "fine-toothed comb" and Wright agreed, the State presented evidence of an agreement to conceal. The State also presented evidence of two possible acts in furtherance of Wright and Williams's agreement. First, the State presented that a small, square scale was found in the locked shed—a location identified only by Wright. There is no indication in the call Williams had with his mother that Andrus had moved the scale to the shed before Williams spoke with Wright. Indeed, Williams requested that Wright catch anything his mother may have missed and indicated that his mother had the scale for Wright. Second, the State presented evidence of Andrus's and Williams's second call, during which Williams described a cell phone with texts that he did not want law enforcement to see. Given their earlier conversations about cleaning up his room, a reasonable trier of fact could conclude beyond a reasonable doubt that Andrus later located Williams's phone and cleared his messages. Viewing the evidence, though circumstantial, in a light most favorable to the State, either of these two acts after Wright's agreement reasonably could have constituted an act in furtherance of the conspiracy. *See State v. Laird*, 2019 MT 198, ¶ 60, 397 Mont. 29, 447 P.3d 416 ("Circumstantial evidence is adequate [to sustain a conviction] if . . . it is of such quality and quantity as to legally justify guilt beyond a reasonable doubt when all of the facts and circumstances are considered collectively.").[3]

---

[3] Wright contends that the State presented only one overt act—Andrus's cleanup *before* Wright

¶12 Finally, contrary to Wright's argument on appeal, the State presented sufficient evidence that Wright purposefully entered the conspiracy—Wright expressed her care for Williams during their call, and Williams expressed concern about the parole consequences if Wright did not assist him in concealing evidence. On such facts, a rational jury could find purpose.

**"*Gillham*" Motion**

¶13 Wright argues that the District Court abused its discretion when it denied her motion for a *Gillham* order to allow her to speak with Andrus's attorney Scheveck. Wright contends that not being able to present Scheveck's exculpatory information violated her right to due process because it prevented her from presenting a full defense.

¶14 As an initial point, we agree with the parties that a *Gillham* order was not the proper procedural vehicle to request what Wright sought. *In re Gillham* allows counsel for a convicted defendant to reveal confidential information in a post-conviction proceeding where the defendant alleges ineffective assistance without counsel being subjected to disciplinary proceedings; the case does not address revelations by attorneys in other circumstances. 216 Mont. 279, 282, 704 P.2d 1019, 1020 (1985).

¶15 Framing of the motion and order aside, we conclude that the District Court did not abuse its discretion in denying Wright's request. Scheveck testified that he met with

---

and Williams's agreement. Wright argues that, under the language of § 45-4-102, MCA, overt acts may be considered in furtherance of a conspiracy only when they occur *after* an agreement. Because the State presented sufficient evidence of an act after the agreement, as described above, we need not address this argument in this case.

Andrus after the alleged events took place and after Wright was charged. Scheveck testified that he did not have any information that Wright would not have herself. Given this testimony, it was not arbitrary for the District Court to conclude that Wright already had the information she sought to introduce via Scheveck. Wright's due process right to present a full defense thus was not impacted by the District Court's decision.

¶16     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. Wright's conviction is affirmed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ JIM RICE